**UNITED STATES of America, Plaintiff-Appellant,**

v.

**John Nathaniel LADSON and Eunice Mae Oliver, Defendants-Appellees.**

No. 84–8853.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1985.

Mary Jane Stewart, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

Herbert Shafer, Atlanta, Ga., and David H. Remes, Washington, D.C., for Ladson.

Eugene A. Medori, Jr. (Court-appointed), Decatur, Ga., for Oliver.

Before VANCE and HATCHETT, Circuit Judges, and LYNNE[*], District Judge.

VANCE, Circuit Judge:

█ The question presented in this case is whether the government's lawful seizure of a house in connection with pending civil forfeiture proceedings entitles the government to conduct an inventory search of the house's contents over the objection of a tenant occupying the home. We conclude that it does not and thus affirm the decision of the district court.

## I. FACTS AND PROCEDURAL HISTORY[1]

Defendants John Nathaniel Ladson and Eunice Mae Oliver lived in a rented house at 5864 Deerfield Trail in College Park, Georgia. The owner of the house was Rowland Allen. In March of 1984, the government commenced civil forfeiture proceedings against the house, charging that the property was traceable to drug profits obtained by Allen and hence subject to forfeiture under 21 U.S.C. § 881(a)(6). Soon thereafter, at the government's request, Judge Robert J. Hall of the United States District Court for the Northern District of Alabama issued an order entitled "seizure warrant/writ of entry." The warrant ordered seizure of Allen's real property and directed the executing federal agent to "prepare a written inventory of the real estate and property thereon seized."

The executing agent turned out to be Special Agent Paul Markonni of the Drug Enforcement Administration.[2] Markonni arrived at the property along with three police officers and found Oliver at home. Over her protest, two of the officers began to conduct a "walk-through" inventory of the home's contents. Minutes later, the officers called Markonni into the bedroom. There, Markonni saw in plain view what he believed to be drugs and drug paraphernalia. A field test indicated the presence of cocaine. Markonni arrested Oliver, obtained a search warrant, and in the ensuing search discovered further suspected contraband.

█ After Oliver and Ladson were indicted on several drug charges, they moved to suppress the evidence discovered in their home. The district court held the evidence inadmissible under the fourth amendment exclusionary rule. A week later, the government moved for reconsideration on the basis of the "good faith" exception to the exclusionary rule. The district court denied the motion, and this appeal followed. We have jurisdiction under 18 U.S.C. § 3731.[3]

---

[*] Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. There is no disagreement among the parties as to the facts.

2. Agent Markonni had not previously been involved with the Allen case, but he had participated in an investigation of alleged drug dealing by Ladson. Ladson and Oliver suggest that Markonni's participation in the seizure of the house, which he knew to be Ladson's residence, may have been more than mere coincidence. Because we hold Markonni's entry into the house unlawful on other grounds, we need not reach this issue.

3. Ladson and Oliver contend that this appeal is untimely under Fed.R.App.P. 4(b). We disagree. Although the government's notice of appeal was not filed within 30 days from the entry of judgment as is normally required by Rule 4(b), the 30 day period runs anew from the denial of a motion for reconsideration. *United States v. Dieter*, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976). Ladson and Oliver contend that *Dieter* does not apply here because the government's motion dealt exclusively with a new issue—the good faith exception to the exclusionary rule—and thus did not ask the court to *re*-consider anything. In fact, however, the motion did ask the court to reconsider something: its ultimate holding on the suppression issue. In the alternative, the appellees argue

## II. DISCUSSION

### A. *The Plain View Exception*

■ Agent Markonni had no warrant entitling him to search for or seize the evidence originally discovered, and the warrant under which the additional evidence was found was obtained on the basis of the original evidence. Thus, the exclusionary rule and the "fruit of the poisonous tree" doctrine require us to affirm the district court's decision to suppress all the evidence unless Agent Markonni's original discovery falls within an exception to the fourth amendment's warrant requirement. The government contends that the evidence is admissible under the "plain view" exception, which is applicable if three conditions are met. First, the initial intrusion which made the discovery possible must have been lawful. Second, the discovery must have been inadvertent. Finally, it must have been immediately apparent that the item was evidence, contraband or otherwise subject to seizure. *United States v. Kent,* 691 F.2d 1376, 1382 (11th Cir.1982), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983); *see Coolidge v. New Hampshire,* 403 U.S. 443, 465–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971) (plurality opinion).

The parties agree that the second and third requirements were fulfilled. Thus, the only question before us is whether Agent Markonni's initial entry into the defendants' home was lawful. The government, contending that it was, first argues that the entry was authorized by the "seizure warrant/writ of entry" issued by Judge Hall. It next contends that as custodian of the house during the forfeiture

proceeding, the government had the right to inventory household furnishings and inspect for damage. Finally, it suggests that it had the authority as custodian to exercise the contractual right of Allen, the owner, to inspect the premises. We reject all three contentions.

■ 1. Nothing in the seizure warrant issued by Judge Hall expressly authorized the government to enter the house without permission. Thus, the government is constrained to argue in brief that "in order to perform the inventory as ordered by the court, the agents obviously had to conduct a brief 'walk-though' [sic] of the house." We disagree. Properly understood, Judge Hall's order required nothing more than a cursory examination of the lot. The warrant authorized seizure of Allen's *real estate* and ordered an inventory of the "property ... *seized*" (emphasis added). It would have been a simple matter to inventory the *seized* property—that is, the real estate and improvements on it—from outside the house. Although it is true that Agent Markonni could not inventory the *contents* of the house without entering, that property was not subject to seizure, and the warrant did not authorize an inventory of property not seized. The government thus cannot rely upon the seizure warrant to legitimate Markonni's initial entry.[4]

■ 2. The government's contention that it could legally enter the house to inventory furnishings and inspect for damage even without a warrant is also untenable. As the Drug Enforcement Administration ("DEA") is well aware,[5] the fourth

that the appeal period ran from the denial of the government's motion with respect to the good faith issue, but for all other issues continued to run from the original decision and hence expired before the notice of appeal was filed. *Dieter,* however, indicates otherwise. In that case, as in this one, the motion for rehearing was based only on new arguments. Nevertheless, the Court held the appeal timely and remanded the case without limiting further proceedings to the issues presented in the motion. The rule Ladson and Oliver suggest would present future appellants with a choice of two evils: either ask the district court to reconsider

every appealable issue, even when to do so would surely be fruitless, or lose the benefit of *Dieter.* We decline to introduce additional complications into the lives of would-be appellants.

4. We do not hold that Judge Hall could not have authorized entry into the home if presented with probable cause sufficient to support a warrant, but only that he did not do so in this instance.

5. The DEA's own forfeiture manual states:
   The owners or occupants [of seized real property] do not automatically lose their privacy

amendment applies to searches for administrative purposes as well as searches in the criminal context. "The showing of probable cause necessary to secure a warrant may vary …, but the necessity for the warrant persists." *Michigan v. Tyler*, 436 U.S. 499, 506, 98 S.Ct. 1942, 1948, 56 L.Ed.2d 486 (1978). There are, of course, "certain carefully defined classes of cases" to which the warrant requirement does not apply. *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). Where the privacy of the home is involved, however, there is only *one* type of case in which a warrant is not required. Because the protection of private dwellings lies at the very heart of the fourth amendment, *"only exigent circumstances* will justify a warrantless intrusion into a home." *United States v. Parr*, 716 F.2d 796, 814 (11th Cir.1983) (emphasis added) (citing *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980)).

The government does not argue, and could not reasonably contend, that exigent circumstances sufficient to justify a warrantless entry were present in this case. Under *Parr*, that should end the matter. Nevertheless, the government asks us to uphold Agent Markonni's entry under the "inventory search" exception to the warrant requirement. *Parr* requires us to refuse. Besides concluding that *only* exigent circumstances may justify a warrantless home search, we specifically declined in *Parr* to extend the inventory exception to such a search. We refused in that case to use the exception "as a bootstrap to undermine the Fourth Amendment protections afforded the sanctity of the home," *id.*, and we likewise refuse to do so here.[6]

■ 3. The government's supposed right as custodian to exercise the landlord's

prerogative to enter makes a no more appealing bootstrap. First, the argument is clearly pretextual. Agent Markonni never claimed that he entered the house to inspect the premises, and there is no evidence to suggest that he did so. The intrusion in this case cannot be justified on the ground that an intrusion for some other purpose might have been lawful. Second, nothing in the rental agreement gave the landlord the right to force his way onto the premises over the tenant's objection. If the tenant refused entry, the landlord would have had to seek a court order. Thus, the rental agreement could not have given Agent Markonni the right to gain entry by resort to self-help rather than a judicial decree.

■ We do not hold that the government may never have good reason to inspect a seized house and conduct an inventory of its contents. We hold only that absent exigent circumstances, the government must follow the advice in the DEA's own Guide to Forfeiture of Assets: if probable cause exists to enter the premises, obtain a warrant. *See supra* note 5. Any other rule would permit government agents to circumvent the safeguards provided by the fourth amendment in any case involving the seizure of real estate. Such a result is particularly unappealing where, as here, it would sanction warrantless governmental intrusions into the homes of third parties unrelated to the original seizure.

B. *The Good Faith Exception*

■ The government's contention that the evidence in question is admissible under the good faith exception to the exclusionary rule was raised for the first time before the district court in a motion for reconsideration. Judicial economy requires that prosecutors make their evidentiary arguments before judgment or not at all,

---

rights in the premises pending the outcome of the forfeiture. Nor do they lose their privacy rights as to their personal property stored on the premises…. If probable cause exists to search the premises, obtain a separate search warrant.

H. Myers & J. Brzostowski, *U.S. Department of Justice Drug Enforcement Administration Drug Agents' Guide to Forfeiture of Assets* 188 (1981).

6. Indeed, at oral argument counsel for the government conceded that she could cite no case applying the "inventory search" exception to real estate.

unless there is a reasonable justification for raising a new issue in a post-judgment motion. *United States v. Thompson*, 710 F.2d 1500, 1504 (11th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 730, 79 L.Ed.2d 190 (1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985). The government's justification in this case is that the Supreme Court cases adopting the exception, *United States v. Leon,* — U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard,* — U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), were decided too late for the good faith argument to be made any earlier than it was. In reality, however, the two cases were handed down more than a month before the suppression hearing. Furthermore, the good faith exception has been the law of this circuit since its creation. *See United States v. Williams*, 622 F.2d 830 (5th Cir.1980) (en banc), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). We thus find the proffered excuse too weak to justify our consideration of the government's untimely argument.

The judgment of the district court is AFFIRMED.