UNITED STATES of America,
Plaintiff-Appellant,

v.

Genaro Rafael HERNANDEZ–CANO,
Defendant-Appellee.

No. 86–8288.

United States Court of Appeals,
Eleventh Circuit.

Jan. 23, 1987.

Stephen S. Cowen, U.S. Atty., Julie E. Carnes, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

Paul Kish, Federal Public Defender, Atlanta, Ga., for defendant-appellee.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

GODBOLD, Circuit Judge:

Defendant Hernandez-Cano was charged with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). He moved to suppress the introduction of the seized cocaine because it was obtained through a search of his luggage at Atlanta Hartsfield International Airport in violation of his rights under the Fourth Amendment. The district court, accepting the magistrate's recommendation, granted defendant's motion to suppress the evidence. The government filed an interlocutory appeal of this order pursuant to 18 U.S.C. § 3731. We reverse the district court's order because the court improperly concluded that the inevitable discovery exception to the exclusionary rule was inapplicable.

## I. FACTUAL BACKGROUND

Hernandez-Cano was scheduled to take an early morning flight from Atlanta to Houston on October 18, 1985. Around midnight of October 17, he attempted to pass through the security area at the Atlanta airport. After the x-ray machine revealed the presence of a large dark mass inside his carry-on bag, Clementine Ofor, an airport security employee, requested and received defendant's permission to inspect the bag. As Ofor located and attempted to pull out the large mass, defendant objected to any further inspection of his bag, claiming that the mass was just some "dirty clothes" that he did not want her to smell. After repeated refusals by Hernandez-Cano to permit further inspection, he agreed to open the bundle a little bit. From her limited view, Ofor observed what she thought was "white powder." When the defendant refused to unwrap the bundle so that Ofor could get a better view, Ofor called her supervisor, who in turn summoned an Atlanta police officer. The officer, upon being informed that defendant had not permitted the security guard to inspect his carry-on bag, told Hernandez-Cano that if he did not allow his bag to be inspected, he could not pass through the security checkpoint. The officer did not detain defendant, and defendant left the

---

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

area and headed toward the airport terminal.[1]

After leaving the security area, Hernandez-Cano returned to the Eastern Airlines ticket counter where he had previously checked two pieces of luggage. He explained to the ticket agent, Rebecca Wallace, that he wanted to transfer a heavy item from his carry-on bag to one of his already checked pieces of luggage. Defendant then removed a large "squishy" bundle wrapped in clear plastic from his carry-on bag and transferred it to a checked bag. Wallace then sent defendant's checked luggage to the baggage area for loading onto the airplane. As defendant passed through the security area to board his plane he told Ofor that he had thrown away the bundle that he had previously claimed was dirty clothes.

In the meantime Ofor had informed her supervisor that the bundle appeared to contain white powder that "could be an explosive or anything." *U.S. v. Hernandez-Cano*, CR85-428A, slip op. at 5 (N.D.Ga. Feb. 11, 1986). As a result of this discussion two airport security employees went to the Eastern Airlines ticket counter and inquired whether Hernandez-Cano had rechecked any items. Upon learning what had transpired at the security area, Wallace became quite concerned about the safety of the aircraft, whether the bundle contained "drugs or a bomb," because "you never know what somebody is thinking, they could get up in the air and claim they have something in their bag." *Id.*

At this point Wallace notified the Eastern control tower of the situation and told it to hold defendant's checked luggage. She then went to the baggage area, identified defendant's two checked bags, and had them pulled off the rack where they had been placed for loading onto the airplane. She then went to the airplane to discuss the situation with the pilot.

Wallace's supervisor at Eastern Airlines, Carol Fleck, overheard most of the conversation between the two airport security guards and Wallace. Fleck likewise became concerned for the safety of the airplane because of other encounters with defendant that had aroused her suspicions. On the previous evening defendant had become upset when he learned that the airline on which he had flown into Atlanta had closed for the day and locked up his luggage. Rather than continue on his scheduled flight to Houston that evening and have his luggage sent on, defendant decided to remain in Atlanta, pick up his luggage the next morning, and catch the next evening's midnight flight to Houston. Also, earlier in the evening of October 17, Hernandez-Cano had hesitantly and nervously answered an Eastern Airlines' page and appeared very relieved when he discovered that he was being paged only because he had left his passport at the ticket counter.

Because of her concern, Fleck also proceeded to the baggage area. She was accompanied by Atlanta police officer E.T. Singleton, who had appeared at the Eastern Airlines ticket counter and asked permission to go with her. Fleck did not understand why the officer did not take any action once they arrived in the baggage area. She opened one of defendant's checked bags with one of her standard luggage keys because she felt that it was imperative to inspect the bag quickly so as not to hold up the airplane, which had several connections to make in Houston, or require Eastern to have to deal with delayed luggage. Officer Singleton did not instruct Fleck to open the bag; in fact, he was standing several feet away talking to other Eastern employees.

Because defendant's bag was packed tightly, Fleck began to search the bag by

---

1. The officer had the authority to detain defendant and search his bag without first obtaining a search warrant because once an individual presents himself at a security check-in area of an airport, he cannot withhold his consent to an inspection of his carry-on luggage. *U.S. v. Lo-pez-Pages*, 767 F.2d 776, 778–79 (11th Cir.1985); *U.S. v. Herzbrun*, 723 F.2d 773, 775–79 (11th Cir.1984); *U.S. v. Clay*, 638 F.2d 889, 891–92 (5th Cir. Unit B), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1996, 68 L.Ed.2d 310 (1981).

feeling around its edges to avoid unduly disturbing the contents, which would make repacking difficult and time-consuming. After Fleck had searched approximately half of the bag in this manner, Officer Singleton, who by this time had been looking over Fleck's shoulder for a few minutes, reached down into the bottom of the suitcase and pulled out a large bundle. Upon opening the bundle, which was wrapped in a shirt, the officer discovered a clear plastic bag containing a white powdery substance, later identified as cocaine.

Singleton testified at the evidentiary hearing that his understanding of the law at the time was that, although he was not allowed to open the bag, once it already had been opened by an Eastern employee he could participate in the search. Fleck testified that had Singleton not reached his hand into the suitcase, it was entirely reasonable to assume that she would have completed the search and discovered the cocaine.

## II. DISCUSSION

The government raises two issues on this appeal. First, the district court erred in holding that no exigent circumstances existed to excuse Officer Singleton's failure to obtain a search warrant prior to reaching his hand into defendant's suitcase. Second, the district court erred in refusing to apply the inevitable discovery exception to the exclusionary rule. Although the court correctly concluded that Officer Singleton's warrantless search was not justified, we hold that the inevitable discovery exception should have been applied and, therefore, the evidence was admissible.

**2.** Defendant argues that the government is barred from alleging exigent circumstances because it failed to raise this argument before the magistrate at the evidentiary hearing. Defendant cites *U.S. v. Ladson,* 774 F.2d 436 (11th Cir.1985) and *U.S. v. Thompson,* 710 F.2d 1500 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 2333, 85 L.Ed.2d 850 (1984), where the Eleventh Circuit held that the government could not raise a new issue after judgment had been entered by the district court. These cases, how-

### A. *Legality of Officer's Search*

■ The district court held that although probable cause may have existed to search defendant's suitcase for drugs, the search without a warrant was illegal. The court further held that there were no exigent circumstances that would excuse the failure of the government to obtain a warrant prior to the search. The government contends that the district court did not understand the immediacy of the situation. Because the defendant's luggage could have contained explosives, the government argues, Officer Singleton acted properly when he reached into the suitcase without first obtaining a warrant.[2] We disagree.

As the district court noted, any exigencies inherent in the situation could have been removed by arresting the defendant, for which probable cause existed. Even if exigent circumstances existed that justified the seizure of the suitcase to prevent the loss or destruction of its contents, the government still had to obtain a warrant to search the suitcase. *See U.S. v. Place,* 462 U.S. 696, 703–07, 103 S.Ct. 2637, 2642–44, 77 L.Ed.2d 110 (1983). Singleton's search of the luggage was therefore illegal.

### B. *Inevitable Discovery Exception*

■ Under the inevitable discovery exception to the exclusionary rule, evidence is admissible that otherwise would be excludable if it inevitably would have been discovered by lawful means had the illegal conduct not occurred. The Supreme Court first recognized this exception in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). In *Nix* the suspect directed the police to the location of the body of the murder victim as a result of an illegal interrogation. Immediately prior to

ever, involved post-judgment motions to reconsider orders of suppression by the district court. In the present case the government argued the existence of exigencies in its objection to the magistrate's report. Furthermore, relying on the evidence developed at the suppression hearing before the magistrate, the district court expressly considered and ruled on exigent circumstances. Therefore, the issue of exigent circumstances is properly before this court.

the suspect's confession, a 200–person volunteer search party under the direction of the police had closed to within two and one-half miles of the site on which the body was found. Applying a preponderance of the evidence standard, the Court held that evidence relating to the body of the murder victim was admissible into evidence at the suspect's trial because the search party inevitably would have discovered the evidence within three or four hours because of their diligent and methodical search. *Id.* at 449–50, 104 S.Ct. at 2512.

The Supreme Court explained that the exclusionary rule was inapplicable where the evidence inevitably would have been discovered by lawful means. *Id.* at 444, 104 S.Ct. at 2509. Under the exclusionary rule, illegally seized evidence or evidence that was the indirect "fruit" of unlawful police conduct is inadmissible. *Id.* at 442, 104 S.Ct. at 2508; *Wong Sun v. U.S.*, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). "The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections." *Williams*, 467 U.S. at 442–43, 104 S.Ct. at 2508–09.

The Court reasoned, however, that although the government should not be put in a better position because of its illegal conduct, it should not be put in a worse position because of the conduct either. "[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred." *Id.* at 443, 104 S.Ct. at 2508 (emphasis in original). Therefore, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that

the evidence should be received." *Id.* at 444, 104 S.Ct. at 2509.

The Supreme Court also held that a requirement that the government prove the absence of bad faith prior to application of the inevitable discovery exception would similarly put the government in a worse position than if no illegal conduct had occurred; therefore, the government did not have to prove its good faith before it could take advantage of the exception. *Id.* at 445–46, 104 S.Ct. at 2510.

Had Singleton not intervened in the search here Fleck inevitably would have discovered the cocaine. Fleck testified at the hearing that it was entirely reasonable that she would have continued to search the luggage until she had found the suspicious package, which she believed may have posed a threat to the safety of the passengers on the airplane.

■ Fleck's search was clearly lawful because the Fourth Amendment does not extend to searches by private parties. The district court, however, held that the inevitable discovery exception to the exclusionary rule was inapplicable because the exception applies only to inevitable lawful discoveries by government agents, not private parties. We hold otherwise.

The Supreme Court in *Williams* did not address the situation where the lawful conduct that inevitably would have led to discovery of the evidence was by a private party rather than the government. Nor has the Eleventh Circuit ever considered whether the inevitable discovery exception applies to actions by private parties. The district court's reliance on *U.S. v. Satterfield*, 743 F.2d 827 (11th Cir.1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) to conclude that the exception does not apply to prior actions by a private party is misplaced.

In *Satterfield* the court explained that the Supreme Court was silent in *Williams* as to what constitutes an "inevitable discovery" under the exception. The court held, therefore, that it would continue to apply the Eleventh Circuit's version of the

inevitable discovery exception to the extent that it was consistent with *Williams*. *Id.* at 846–47. The Eleventh Circuit rule was as follows:

> To qualify for admissibility, there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued *prior* to the occurrence of the illegal conduct.

*Id.* at 846 (emphasis in original); *see also U.S. v. Brookins,* 614 F.2d 1037, 1042 n. 2 (5th Cir.1980).

In *Satterfield* police searched the defendant's home prior to obtaining either an arrest warrant or a search warrant. The government maintained that the disputed evidence, a shotgun, inevitably would have been discovered because the police obtained a valid search warrant for the defendant's house several hours after the illegal search was made. The court held that the inevitable discovery exception applied only if the government had initiated the lawful means, here the valid search warrant, that would have led to the discovery of the evidence prior to the unlawful conduct. *Satterfield,* 743 F.2d at 846. Any other rule would effectively emasculate the exclusionary rule because, in most illegal search situations, the government could have obtained a valid search warrant if it had waited. *Id.; see also U.S. v. Cherry,* 759 F.2d 1196, 1204–05 (5th Cir.1985).

The focus in *Satterfield* was on timing, not on the party whose action constituted the prior lawful conduct. Therefore, *Satterfield* does not bar this court from applying the inevitable discovery exception to a situation where the disputed evidence inevitably would have been discovered by the already initiated conduct of a private party.

*Williams* supports the application of the exception to prior lawful conduct by a private party. In *Williams* the Supreme Court explained that the purpose of the exclusionary rule is to deter unlawful police conduct. By excluding the fruits of illegal police conduct, "the prosecution is not ... put in a better position than it would have been in if no illegality had transpired." *Williams,* 467 U.S. at 443, 104 S.Ct. at 2508. The Supreme Court further explained, however, that the government should not be put in a worse position than it would have been in had the illegal conduct not occurred. *Id.*

■ If we declined to extend the inevitable discovery exception to Fleck's search, we would put the government in a worse position than it would have been in had Singleton not reached his hand into defendant's luggage. This result would be inconsistent with the reasoning in *Williams.* We hold, therefore, that because Fleck's inspection of defendant's luggage inevitably would have led to the discovery of the cocaine, all evidence relating to the discovery of the cocaine is admissible under the inevitable discovery exception. *See U.S. v. Wilson,* 671 F.2d 1291, 1293–94 (11th Cir.) (evidence of threat on president-elect admissible under inevitable discovery exception because "[e]ven if the letter had not been intercepted and opened by [prison officials], there is a reasonable probability that someone on the staff of the President-elect would have opened it on its arrival in Washington, D.C."), *cert. denied,* 459 U.S. 844, 103 S.Ct. 98, 74 L.Ed.2d 89 (1982); *see also Wicker v. McCotter,* 783 F.2d 487, 497 (5th Cir.) (evidence admissible because if suspect had not directed police to the location of the murder victim's body, it "would inevitably have been discovered by law enforcement officers or private citizens"), *cert. denied,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986).[3]

REVERSED.

---

3. Defendant contends that the inevitable discovery exception is not applicable here because Singleton acted in bad faith when he reached into defendant's luggage. This argument is without merit because the Supreme Court expressly rejected a good faith requirement in *Williams,* 467 U.S. at 445–46, 104 S.Ct. at 2510.