**UNITED STATES of America,**
**Appellant,**

v.

**John SHOWALTER.**

No. 88–1123.

United States Court of Appeals,
Third Circuit.

Argued Aug. 17, 1988.

Decided Oct. 5, 1988.

---

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Joseph M. Miller (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellant.

John J. Duffy (argued), Joseph P. Green, Jr., Duffy & Green, West Chester, Pa., for appellee.

Before STAPLETON, and MANSMANN, Circuit Judges, and FISHER, District Judge.*

## OPINION OF THE COURT

CLARKSON S. FISHER, District Judge:

This is an appeal from the district court's order suppressing certain evidence as illegally obtained under the Fourth Amendment. Specifically, the United States appeals from the court's conclusion that the presence of Pennsylvania State Police and Drug Enforcement Agency officers was impermissible under an order issued to the United States Marshals permitting them to conduct an inventory search incident to a civil forfeiture proceeding.

On June 22, 1987, the Pennsylvania State Police executed a search warrant at property leased by the appellee, John Showalter, and his wife in Myerstown, Pennsylvania. At that time, the troopers seized laboratory equipment, chemicals, formulae, methamphetamine and a number of firearms. Subsequently, the Drug Enforcement Administration ("DEA") became involved in the investigation. The United States then filed a complaint for forfeiture of real property, and the clerk of the district court issued a warrant for arrest at action *in rem* for the Showalter property. App. 22–23. *United States of America v. Premises Known as R.D. 4, Box 66A, Myerstown, Pennsylvania*, Civil Action No. 87–5454 (E.D.Pa. 1987).

On August 31, 1987, the United States moved to permit the United States Marshal's Service to enter the premises and conduct an inventory search. The district court granted the motion and issued an order stating:

---

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

that at the time of the arrest of the real property herein, the United States Marshals are hereby authorized to enter the premises R.D. 4, Box 66A, Myerstown, Pennsylvania, for the purposes of conducting an inspection of the property in order to note any hazardous conditions and to inventory any items which are affixed to the realty and are thereby subject to the forfeiture.

App. 28–29.

Prior to executing the order, Deputy Marshal Gerald Reilly contacted Bryan Donga of the DEA for background on the case. App. 183. Contrary to the government's assertion, it was Donga who volunteered that he would arrange to have several DEA agents accompany the Marshals on the inventory, as well as, perhaps, Pennsylvania State Police officers. App. 184. Upon arriving at Showalter's property, both Reilly and an administrative assistant of the Marshal's Service, Dan Orr, accompanied by two Pennsylvania state troopers and three DEA agents, announced their purpose to the Showalters and proceeded to videotape the inside and outside of the home.

Although the Marshals requested that Showalter accompany them, at some point in time he left their presence, ostensibly to make a telephone call to his attorney. The officers then asked Mrs. Showalter to accompany them to the garage and barn, where they began to videotape the interior and exterior of the barn. App. 186–87.

Donga, the DEA agent, testified that when Showalter left their presence, the Marshals, the DEA agents and the State Police officers went to look for him. While the barn was being videotaped, Showalter was seen entering the yard area, and the officers interrupted the videotaping and went to talk to him for the purpose of again asking him to accompany them while they videotaped. App. 152, 188. Deputy Marshal Reilly testified that he observed briers on Showalter's clothing, as well as an unusual odor about him. To Reilly,

however, the smell was unrecognizable. App. 190.

In a subsequent conversation among the officers present, both the State Police officers and the DEA agents identified the smell on Showalter's clothing as methamphetamine. Later the troopers executed affidavits and procured a search warrant of the premises. App. 30–31, 191. That warrant was executed on September 1, 1987, and resulted in the seizure of laboratory equipment, chemicals and phenyl–2–propanone.[1]

Consequently, Showalter was arrested on October 16, 1987, and on November 12, 1987, a three-count indictment was returned charging him with manufacturing and possessing non-narcotic controlled substances, in violation of 21 U.S.C. § 841(a)(1). App. 31–33. Showalter pleaded not guilty to the indictment, and his attorneys filed a motion to suppress the evidence. After evidentiary hearings, the district court suppressed evidence found on September 1, 1987, concerning Showalter's alleged crimes.

In granting the motion to suppress the fruits of the September 1 search, the district court also prevented the agents and State Police officers from testifying as to smelling methamphetamine on the defendant's clothing. It is from the latter portion of the ruling that the government has appealed. The United States does not challenge the district court's suppression of the items seized.

■ The property in question is owned by Mrs. Showalter's father, App. 195; however, the Showalters have resided on the property under a lease agreement with the owner. The defendant thus had a reasonable expectation of privacy in the premises and the government acknowledges that this expectation remained reasonable after the arrest of the property. *See U.S. v. Ladson,* 774 F.2d 436 (11th Cir.1985).

Although the court concluded that the presence of the other law-enforcement offi-

---

**1.** A subsequent search of the premises was conducted on September 26, 1987. That search, however, is unrelated to this appeal.

cers was not a pretext for conducting an unauthorized search, App. 225, the evidence obtained as a result of their presence was nevertheless suppressed. Relying on the general proposition that an inventory search "must be no more intrusive than necessary," *see United States v. Jackson,* 529 F.Supp. 1047, 1053 (D.Md.1981), the court concluded that the presence of the State Police officers and the DEA agents was both unauthorized and unnecessary. App. 226.

The government has appealed only from the suppression of the evidence allegedly within the "plain smell" of the police officers, and it is evident that the court excluded this evidence solely on the basis of the unauthorized and unnecessary presence of the State Police and DEA agents.

The parties agree that the olfactory observations of the troopers and DEA agents must be suppressed if they were not legally on the Showalters' premises at the time those observations were made. The parties differ only on whether their presence on those premises was lawful. The district court examined and rejected two possible theories under which their presence might be legally justified. First, it rejected the government's contention that any order authorizing entry on occupied property provides implied authority to do that which is reasonably necessary to accomplish the purpose of the entry in a safe manner, including the enlistment of additional supporting personnel, and that the presence of the state troopers and DEA agents on the Showalter property was thus judicially authorized. The district court also considered the argument that, even if the presence of the troopers and agents be viewed as not authorized by the court order, court autho-

rization was not a prerequisite to a constitutionally valid entry for the purpose of conducting an inventory in connection with a civil forfeiture.

■ We accept, *arguendo,* the legal premise of the government's implied authority argument.[2] It does not aid the government in this case, however, because the district court found that the presence of the state troopers and the DEA agents was unnecessary to the marshals' mission. As detailed hereafter, that conclusion is supported in the record, and we will not disturb it.

■ The second theory rejected by the district court involves an extension of the so-called "inventory exception," which has been applied to excuse the absence of court authorization in situations involving routine inventory undertaken to protect the property of the owner as well as the interests of the police. *See, e.g., Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). We have substantial reservation about whether these precedents have any relevance in the context of an entry on residential property.[3] We need not decide, however, whether there are situations in which the need for an inventory on residential real estate renders an intrusion on that property reasonable despite the absence of court authorization. This case does not satisfy the requirements that courts have established in applying the inventory exception.

The Fourth Amendment does not prevent all searches and seizures; rather, it prohibits those which are unreasonable. *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). In

---

**2.** We note, however, that the cases relied on by the government involved search warrants executed pursuant to 18 U.S.C.A. § 3105, which specifically authorizes the executing officer to enlist the aid of others. Section 3105, titled "Persons authorized to serve search warrant," provides:

A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.

*See, e.g., United States v. Martin,* 600 F.2d 1175 (5th Cir.1979). Because the marshals in the instant case were not executing a search warrant, § 3105 is not applicable here.

**3.** Given our views with respect to the government's argument, we have no occasion to address whether a court can enter an order like the one here entered in the absence of a showing of probable cause. *Compare U.S. v. Ladson, supra.*

*Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Court noted that the "touchstone of our analysis" is "reasonableness in all the circumstances of the particular government invasion of a citizen's personal security." *Id.* at 109, 98 S.Ct. at 332, *quoting Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968).

It is beyond argument that the Fourth Amendment extends its greatest protection to the home. In *Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed. 2d 639 (1980), the Court stated:

In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*See also United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972) "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."; *United States v. Martinez–Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976) " ... we deal neither with searches nor with the sanctity of private dwellings, ordinarily afforded the most stringent Fourth–Amendment protection...."

We know of no authority which creates an inventory exception to the warrant requirement which pertains to one's home, rather than an automobile. Moreover, none of the factors which have been used to justify the warrantless inventory search of an automobile are present in this case or when generally applied to the home.

In *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976), the Court upheld a warrantless inventory search of an automobile on the basis of both "the traditionally-drawn distinction between automobiles and homes

..." and the existence of uniform procedures by which inventory searches were conducted by the police. "The decisions of this court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable." *Id.* at 372, 96 S.Ct. at 3098–99.

Clearly, under *Opperman,* there is no basis for extending the inventory exception to the general warrant requirement in this case. First, because the inventory search here was undertaken in Showalter's home, his expectation of privacy was far greater than that accorded to the owner of an automobile. *See Opperman, supra,* at 372, 96 S.Ct. at 3098; *Cady v. Dombrowski,* 413 U.S. 433, 439–40, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). Second, there was no evidence that the United States Marshals enlisted the help of either the DEA or the State Police pursuant to a uniform or standard procedure. Although there is evidence that it is customary to obtain assistance of other agencies as a result of manpower shortages, the lack of any specific guidance above and beyond enlisting the help of other law-enforcement agencies is most troubling. Certainly, such a practice, without more, cannot be compared to standardized official procedures upheld in the automobile exception cases.

We think the District Court properly looked to the factors justifying a warrantless search of an automobile. In applying those considerations, the court correctly concluded that none of those factors justified the warrantless presence of the State Police and DEA agents.

As the district court noted, the inventory exception has been applied only where the intrusion on privacy was necessary to permit the required inventory to be conducted and where the entry and inventory were made pursuant to a well established, standardized procedure.[4]

---

4. The Supreme Court has held that the existence of less restrictive alternatives to a search are not to be considered in calculating whether a routine, warrantless inventory search is reasonable; instead, the appropriate inquiry involves balancing the search's "intrusion on the individu-

al's Fourth Amendment interests against its promotion of legitimate governmental interests." *Illinois v. Lafayette,* 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983), *citing Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Although the dis-

First, in this case, the presence of the troopers and the DEA agents was not necessary for either the taking of the inventory or the maintenance of security. There is no evidence that they either participated in the taking of the inventory or deployed themselves in a manner consistent with a peacekeeping function. Indeed, there was no evidence that anyone ever anticipated a security problem during the taking of the Showalter inventory. Deputy Marshal Reilly testified as follows:

> THE WITNESS: I don't recall if we had any information that there were weapons. I asked if there were any dogs. He [Donga] said he knew there were animals, that he did have a barn there with horses, but he wasn't aware of dogs, which is another one of our concerns. But as far as weapons and as far as any unusual risk, I don't recall.
>
> THE COURT: Nothing was anticipated?
>
> THE WITNESS: Nothing other than our normal concerns about getting there with such an emotional issue, no. There was no—
>
> THE COURT: No special treatment?
>
> THE WITNESS: No special treatment, no. We didn't wear bullet-proof vests or anything like that out of concern.

App. 208–09.

Second, we hesitate to embrace the government's argument in view of the complete lack of official guidelines governing these situations. Although it may be customary for the Marshals to seek out the assistance, even for security reasons, of other agencies, based on the record before the court we can only presume that the size and scope of that assistance is left to the unfettered discretion of the officers involved.

In sum, the district court properly excluded the evidence because of the unauthorized presence of the state troopers and the DEA agents at Showalter's home. Showalter had an expectation of privacy by virtue of the Fourth Amendment. Neither the authority bestowed upon the marshals by the August 31st order nor the inventory exception to the warrant requirement rendered lawful the presence of the troopers and agents on the Showalter property at the time they made their olefactory observations. Accordingly, we will affirm the order of the district court.

---

trict court's reliance on the statement, "[an] inventory search must be no more intrusive than necessary to fulfill the purported purpose of the search," is somewhat misleading, we do not understand the district court's conclusion to be in conflict with the Supreme Court's reasoning in *Lafayette.* The district court's finding that the presence of the additional law enforcement personnel was unecessary is not the same as holding that the warrantless search could have been less intrusive. Rather, as the district court explained and as is described above, the additional law enforcement presence was unnecessary because their search did not further any legitimate governmental inventory purpose.