# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

COMMONWEALTH *vs.* RAMONA M. BALICKI
(and seventeen companion cases[1]).

Hampshire. October 2, 2001. - February 8, 2002.

Present (Sitting at Salem): MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Videotape, Photograph. *Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant, Plain view, Inevitable discovery.

This court declined the Commonwealth's invitation to eliminate the inadvertence requirement of the plain view exception to the search warrant requirement of art. 14 of the Massachusetts Declaration of Rights and to follow the United States Supreme Court's decision in *Horton* v. *California,* 496 U.S. 128 (1990), abandoning the inadvertence requirement; however, the court took this opportunity to clarify that the inadvertence requirement means only that the police lacked probable cause to believe, prior to the search, that specific items would be discovered during the search. [7-10]

---

[1]Ten against David P. Dec and seven against Ramona M. Balicki.

On a motion to suppress evidence seized by the police during a search of the defendants' home conducted pursuant to a search warrant, the judge correctly suppressed photographs and videotape recordings of the entire home [10-13], as well as the testimony of police officers about their observations of the items photographed and videotaped during the search [13-15], where a limited search authorized by the warrant was converted into a general search of the home for potential evidence in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

On a motion to suppress evidence seized by the police during a search of the defendants' home conducted pursuant to a search warrant, the judge erred in suppressing household items that were seized in plain view during the search but were not listed on the warrant, where all of the requirements for a plain view seizure were met, including the requirement that the police lacked probable cause, before entering the house, to believe the items would be there, thus satisfying the inadvertence requirement. [15]

On a motion to suppress evidence seized by the police during two searches of the defendants' home conducted pursuant to search warrants in 1996 and 1997, the judge correctly suppressed evidence seized during the 1997 search that had been depicted in photographs and videotape recordings of the entire home made during the 1996 search, where the judge found that the Commonwealth had not met its burden of establishing that the items photographed and videotaped during the 1996 search would have been discovered and properly seized through independent or inevitable investigation, absent the illegality. [15-17]

INDICTMENTS found and returned in the Superior Court Department on March 10, 1998.

Pretrial motions to suppress evidence were heard by *Regina L. Quinlan*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Abrams*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Steven Greenbaum*, Assistant District Attorney, for the Commonwealth.

*Joseph A. Hanofee* for David P. Dec.

*Michael Malkovich* for Ramona M. Balicki.

CORDY, J. David P. Dec and Ramona M. Balicki were indicted for forging invoices from their employer, a vocational high school, in furtherance of a scheme to purchase with public

funds household items for their personal use.[2] After their indictments, they each filed motions to suppress evidence seized by the police during two searches of their home. Both searches were conducted pursuant to search warrants. The first search occurred in 1996, and resulted in the seizure of a number of household items, some of which were not listed in the warrant. During this search, the police videotaped and photographed the inside of the home. The second search occurred in 1997, pursuant to a warrant that authorized the seizure of a number of household items, some of which had been photographed or videotaped, but not seized, during the first search.[3]

Following an evidentiary hearing, the motion judge concluded that the videotaping and photographing of the home constituted a seizure beyond the scope of the 1996 warrant. Consequently, she suppressed the videotape and photographs, the testimony of the officers about the items depicted in the videotape and photographs, and all of the evidence obtained during the execution of the 1997 warrant that had been depicted in the videotape and photographs taken during the 1996 search. She also suppressed items seized during the 1996 search that were found in plain view, but were not listed in the warrant, finding that their discovery was not inadvertent. The Commonwealth appealed and we transferred the cases to this court on our own motion.

For reasons different from those of the motion judge, we affirm the suppression of the 1996 videotape and photographs, the suppression of evidence seized during the 1997 search that had been depicted in the videotape and photographs, and the testimony of the officers about their observations of the items that were filmed at the home but not seized during the 1996 search. We reverse the judge's order suppressing the items seized during the 1996 search that were not listed on the war-

---

[2]Specifically, they were charged with engaging in larcenous schemes in violation of G. L. c. 266, § 30; filing false claims or reports in violation of G. L. c. 266, § 67B; making a material statement that is false, omitting or concealing a material fact in a written statement, or using a trick, scheme, or device that is misleading in violation of G. L. c. 266, § 67A; forgery in violation of G. L. c. 267, § 1; common law forgery; filing of false reports as public employees in violation of G. L. c. 268, § 6A; and uttering forged documents in violation of G. L. c. 267, § 5.

[3]The warrant also authorized the seizure of other items (related to a separate investigation) that are not at issue here. See notes 5 & 8, infra.

rant, concluding that they were properly seized under the plain view exception to the warrant requirement.

*Facts.* We take the facts from the judge's findings, supplemented by the undisputed testimony and exhibits in the record.[4] *Commonwealth* v. *Contos,* 435 Mass. 19, 32 (2001).

Dec and Balicki are married. Dec was employed as the business manager of the Smith Vocational Agricultural High School in Northampton (school). As the business manager, he was responsible for submitting invoices to the city treasurer for payment and for maintaining a record of the school's purchases. Balicki was employed by the school as a senior accounts clerk until her employment was terminated on March 27, 1996. She was Dec's assistant.

On March 13, 1996, Detective Robert H. Dunn, Jr., of the Northampton police department and his supervisor, Detective Lieutenant Kenneth Patenaude, attended a meeting at the mayor's office, during which city auditors told them that, based on an examination of a number of school invoices, they suspected someone was using school funds to purchase household items for personal use.[5] Dunn began to review thousands of invoices and to interview school employees. He found a number of questionable invoices that had either Dec's or Balicki's signature, or had signatures of other school employees who denied having purchased the items listed. The investigation quickly led Dunn to suspect that Dec and Balicki had forged school invoices to purchase items that they kept for their own use.

On March 20, 1996, after conferring with the district attorney's office, Dunn obtained a search warrant for the defendants' home. The warrant authorized the seizure of

---

[4] "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing." *Commonwealth* v. *Eckert,* 431 Mass. 591, 592-593 (2000), citing *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), and cases cited.

[5] The auditors were also examining records relating to funds that had been earned from vending machines at the school. This examination eventually led to additional indictments.

seventeen specific items.[6] Dunn did not seek, nor did the warrant grant, authorization to photograph or videotape the home or the items to be seized.

The warrant was executed during the evening of March 20, 1996. Patenaude asked a police photographer to accompany the officers during the search. It was not unusual for officers to bring a photographer to record the execution of a search warrant, because police sometimes photographed and videotaped the scene of a search to protect themselves from accusations of damaged or missing property. These were not, however, the primary reasons for the use of that equipment in this case. Rather, Patenaude directed the photographer to photograph and videotape each room in the home and anything he identified to the photographer as having potential evidentiary value. The videotape and photographs were also used to document each room in the home as it appeared when the officers arrived to execute the warrant, and to serve as a "backup" for the officers to refresh their memories.

During the search, Dunn saw items in the house for which he remembered seeing specific invoices, but about which he had not completed his investigation. He directed officers to seize those items even though they were not listed in the warrant.[7] There were other items that he thought were interesting or suspicious, and he directed the photographer either to photograph or videotape them. In some instances, the items were moved for the purpose of videotaping or photographing.

*The videotape.* The videotape begins by showing various items on the floor and walls of a hallway in the home. The camera then moves slowly into and around the livingroom, showing a lamp, plants, a rocking chair, living room furniture, and tables. The camera next focuses on the dining room, and

---

[6]The items listed in the 1996 search warrant include five lawn chairs (green and white strapping on metal frames), a "flip" chair, a motor for a 1987 Mustang automobile, a Radio Shack portable compact disc player (boombox), a Radio Shack stereo tape recorder, Radio Shack headphones, a remote control for an RCA television, an Acer monitor, and cartons, packaging materials, owner's manuals, instructions, and warranty cards.

[7]These items included included a "Dustbuster," trimline telephone, cordless telephone, "Tfal pan booklet," Black & Decker registration card, Black & Decker can opener, and instructions for a Black & Decker toaster oven.

then a bathroom. It returns to the living room and scans the walls around the room, shelves in the corner of the room, framed photographs on a table, and an electric typewriter.

The camera then focuses on the kitchen, moving from the stove, to the dishes in the sink, the refrigerator, a bulletin board, and the food on the kitchen counters. After returning to the living room, it focuses on and behind a wood stove, a reclining chair, an answering machine, a couch, a television set, and a videocassette recorder. The camera then returns to the kitchen to capture a kitchen counter that is cluttered with appliances, including a clock radio, camera, two "Dustbusters," a telephone, an electric pencil sharpener, pocketbooks, plant food, a pile of papers, and the bulletin board next to the refrigerator, on which there are a dozen unframed photographs.

After moving through the laundry room, the camera next captures a wide range of items in what appears be an attic, basement, or garage. The videotape shows one of the officers lifting a sheet to reveal lawn chairs, and the camera then scans stacks of plastic foot stools, outdoor lounge chairs, bicycles, numerous cardboard boxes, a baby crib, a wheelbarrow, a hose, and a workbench covered with rags, plastic bottles, rolls of tape, old telephones, and cans of paint. The camera then focuses on a boiler and on the uncovered insulation in the walls.

The videotape next shows a bedroom where the camera focuses on a bedside table with a telephone and answering machine, and the shelf behind the bed on which a book and empty glass rest. It scans over the unmade bed to a television set on a chest of drawers, and then to the floor where there is a pile of clothing. It slowly scans through a closet full of clothing and finally concludes in a bathroom capturing the contents of the linen closet and the cabinet under the sink.

*The photographs.* Several of the photographs show wide views of rooms in the home. Others focus on specific items including: a typewriter on the dining room table; vacuum cleaners in the hall near the washing machine; a television set in the living room; an adding machine; boxes for a cordless telephone, sprinkler, and fire extinguisher; and office supplies on top of a file drawer. One photograph focuses on an envelope on the din-

ing room table, and another shows an application for a tax abatement for a motor vehicle.

After the search was completed, Patenaude, Dunn, the photographer, and representatives of the district attorney's office reviewed the videotape and photographs. Items recorded on the film or videotape that were not seized were the subject of further investigation.

On August 25, 1997, Dunn applied for a second search warrant. In the application, Dunn requested permission to seize many items that had been videotaped or photographed during the 1996 search.[8] He also sought and received authorization to photograph the items listed in the warrant. When the warrant was executed, many of the items listed on the warrant were found and seized, and the home was again photographed and videotaped.[9]

*Analysis.* In reviewing motions to suppress, "we give substantial deference to the judge's ultimate findings and conclusions of law, 'but independently review[] the correctness of the judge's application of constitutional principles to the facts found.' " *Commonwealth* v. *Eckert*, 431 Mass. 591, 593 (2000), quoting *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996).

The Fourth Amendment to the United States Constitution requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." Similarly, art. 14 of the Massachusetts Declaration of Rights requires warrants to be "accompanied with a special designation of the persons or objects of search, arrest, or seizure." The particularity requirement serves as a safeguard against general exploratory rummaging by the police through a person's belongings. See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971), modified by *Horton* v. *California*, 496 U.S. 128 (1990); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 298, cert. denied, 493 U.S. 940 (1989).

---

[8]Also sought were a wide range of financial records relating to the vending machine investigation. These items, to the extent they were found, were unrelated to the 1996 search and videotaping and were not suppressed by the judge.

[9]The photographs and videotapes taken during the 1997 search were not suppressed or discussed by the motion judge in her ruling, nor was their suppression specifically sought below either by Dec and Balicki. Therefore, we do not address them here.

"[I]t both defines and limits the scope of the search and seizure, thereby protecting individuals from general searches, which was the vice of the pre-Revolution writs of assistance." *Id.,* quoting *Commonwealth* v. *Pope,* 354 Mass. 625, 629 (1968).

Searches and seizures conducted outside of the scope of a valid warrant are presumed to be unreasonable. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974). When a search or seizure is conducted outside of the scope of a warrant, the burden is on the Commonwealth to demonstrate that the activity falls within an exception to the warrant requirement. See *id.* The plain view doctrine is one of those exceptions.

"Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Commonwealth* v. *D'Amour,* 428 Mass. 725, 730-731 (1999), quoting *Commonwealth* v. *Santana,* 420 Mass. 205, 211 (1995), and cases cited. "In the case of contraband and fruits and instrumentalities of crime, the nexus to criminal activity is obvious." *Commonwealth* v. *D'Amour, supra* at 731, citing *Commonwealth* v. *Accaputo,* 380 Mass. 435, 447 (1980).[10]

However, in order for the plain view doctrine to apply, "[o]ur cases also have required that the police come across the item inadvertently." *Commonwealth* v. *D'Amour, supra,* citing *Commonwealth* v. *Santana, supra.* See *Commonwealth* v. *Moynihan,* 376 Mass. 468, 473 (1978); *Commonwealth* v. *Walker,* 370 Mass. 548, 557, cert. denied, 429 U.S. 943 (1976). "We have described the inadvertence element of the plain view doctrine as requiring 'that police lack[] probable cause before entering the room to believe the items would be there.' " *Commonwealth* v. *D'Amour, supra* at 732, quoting *Commonwealth* v. *Cefalo,* 381 Mass. 319, 331 (1980). The Commonwealth urges us to follow the United States Supreme Court and abandon the inadvertence requirement of the plain view doctrine.

The Supreme Court, which initially required that the seizure of items in plain view be inadvertent, *Coolidge* v. *New Hamp-*

---

[10]See *Payton* v. *New York,* 445 U.S. 573, 587 (1980) (plain view seizure of property not listed in warrant acceptable "assuming that there is probable cause to associate the property with criminal activity").

*shire*, 403 U.S. 443 (1971), abandoned that requirement in *Horton* v. *California*, 496 U.S. 128 (1990). In its ruling, the Court first explained that the fact that an officer has a subjective interest in an item of evidence "and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." *Id.* at 138. It continued on to explain that "the suggestion that the inadvertence requirement is necessary to prevent the police from conducting general searches, or from converting specific warrants into general warrants, is not persuasive because that interest is already served by the requirements that no warrant issue unless it 'particularly describ[es] the place to be searched and the persons or things to be seized,' . . . and that a warrantless search be circumscribed by the exigencies which justify its initiation" (citations omitted). *Id.* at 139-140. It concluded that, "[s]crupulous adherence to these requirements serves the interests in limiting the area and duration of the search that the inadvertence requirement inadequately protects. Once those commands have been satisfied and the officer has a lawful right of access, however, no additional Fourth Amendment interest is furthered by requiring that the discovery of evidence be inadvertent." *Id.* at 140. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Id.*

We decline to eliminate the inadvertence requirement from our art. 14 jurisprudence. "The inadvertence requirement . . . lends credibility to the [plain view] doctrine by ensuring that only evidence which the police did not anticipate or know to be at the locus of a search will be seized without a warrant.' " *Commonwealth* v. *D'Amour*, 428 Mass. 725, 732 (1999), quoting *Commonwealth* v. *Moynihan*, 376 Mass. 468, 473 (1978). "The rationale behind the inadvertent discovery requirement is [] that we will not excuse officers from the general requirement of a warrant to seize if the officers know the location of evidence, have probable cause to seize it, intend to seize it, and yet do not bother to obtain a warrant particularly describing that

evidence." *Horton* v. *California, supra* at 144-145 (Brennan, J., dissenting). The concerns we first expressed in the *Walker* case that "attention must be paid also to seeing that the police, in full possession of probable cause to believe that incriminating evidence is present in a particular place, have not waited until an opportune moment to 'place themselves in a position to gain a plain view of the evidence,'" are no less important today. *Commonwealth* v. *Walker, supra* at 557, quoting *Commonwealth* v. *Forde*, 367 Mass. 798, 809 (1975) (Hennessey, J., concurring in result).

Although the Court in *Horton* may have been correct that the inadvertent discovery requirement furthers no privacy interests, we find that it continues to protect the possessory interests conferred on our citizens by art. 14. "The inadvertent discovery requirement is essential if we are to take seriously the Fourth Amendment's protection of possessory interests as well as privacy interests." *Horton* v. *California, supra* at 147 (Brennan, J., dissenting). For these reasons, we decline to abandon the inadvertence requirement of the plain view exception to the warrant requirement. We do, however, take this opportunity to clarify that the inadvertence requirement means only that the police lacked probable cause to believe, prior to the search, that specific items would be discovered during the search.

*The 1996 search.* The judge found the 1996 warrant to be validly issued, and the seizure of the items listed therein to have been proper. Those findings are not contested on appeal.

a. *The scope of the 1996 search.* The judge stated, and we agree, that "[o]ne of the more troubling aspects of the 1996 search [was] the use of still and video photography," to document the contents of the home. The judge noted that:

> "The premises had been seized for a limited purpose, i.e., to execute a valid warrant for specific items. Without seeking authority to do so, officers inspected the contents of those premises and preserved their observations electronically through the video or through still photographs. The stated primary purpose for bringing in the photographer was to record the condition of the premises and document matters having evidentiary value. The photographer was instructed to record specific items

which were considered interesting or suspicious by Det. Dunn."

The judge found that "[t]he officers seized the defendants' premises and all of its contents. They had authority to do so for a limited purpose. The officers took advantage of that limited authority to document the presence of suspicious items. Although not removed from the premises, they were temporarily seized during the execution of the warrant. Their presence was recorded 'on the hope or possibility that upon further investigation they might discover that the articles had been stolen.' *Commonwealth* v. *Wojcik*, [358 Mass. 623, 631 (1971)]." The judge concluded that the officers lacked probable cause "for this temporary seizure of suspicious items."

We differ from the judge's reasoning but, to the same result, conclude that the limited search authorized by the warrant was converted into a general search of the home for potential evidence, in violation of the Fourth Amendment and art. 14.[11] The videotape and photographs contain compelling evidence of that conversion.

The line between the limited search authorized by the warrant and the general search that we conclude was conducted was crossed when the officers inspected everything of potential evidentiary value in every room of the home, in essence conducting an inventory search.[12] All of the evidence in this case, including the items seized pursuant to the 1996 warrant and the plain view doctrine, were ordinary household items. This may explain, but does not justify, the officers' interest in and search of the contents of the entire house.

While such a search would have been improper even without the use of the video and still cameras, their use not only

---

[11]The Massachusetts Constitution affords greater protections to a person in certain circumstances than those provided by Federal decisions interpreting the Fourth Amendment. See *Commonwealth* v. *Upton*, 394 Mass. 363, 372-373 (1985).

[12]The inventory search exception, which is a "well-defined exception to the warrant requirement of the Fourth Amendment," *Colorado* v. *Bertine*, 479 U.S. 367, 371 (1987), has not been applied to searches of a person's home. See *United States* v. *Showalter*, 858 F.2d 149, 153-154 (3d Cir. 1988); *United States* v. *Ladson*, 774 F.2d 436, 440 (11th Cir. 1985); *United States* v. *Parr*, 716 F.2d 796, 813-814 (11th Cir. 1983).

documented the offending nature of the search, it also contributed to its intrusiveness.[13] It is one thing to be present in a home carrying out the directives of a warrant, and of necessity being in a position to cursorily notice many of its contents. It is quite another to inspect the contents of a home and to create a permanent record of it for review by police, prosecutors, expert witnesses, and others at any time in the future. This record can be played and replayed as many times as necessary or desired, and the images can be focused or enlarged to show each detail of every item in that citizen's home.[14] The use of videotape and photographs in this case goes far beyond the limited photographic preservation of the condition of a search scene (to protect the police from allegations of damage), or the photographic preservation of evidence, in situ, that the police

---

[13]Courts that have considered whether police officers can videotape searches without prior court authorization have reached a variety of conclusions. Some, like the judge in this case, have found that videotaping or photography constitutes a seizure. See State *vs*. West, No. CR98109471 (Conn. Super. Ct. May 31, 2001) (photographing documents is seizure of images contained thereon); *People* v. *Matteo*, 127 Misc. 2d 112, 113 (N.Y. Sup. Ct. 1985) (photographing apartment was premeditated seizure of intangible visual images). Others have found that photography and videotaping are permissible pursuant to one of the exceptions to the warrant requirements. See *State* v. *Spears*, 560 So. 2d 1145, 1150-1151 (Ala. Crim. App. 1990) (officers permitted to photograph and videotape items in plain view); *People* v. *Reynolds*, 672 P.2d 529, 532 (Colo. 1983) (no reason to require search warrant to photograph and measure, as part of ongoing investigation; evidence lawfully seized under plain view exception); *State* v. *Magnano*, 204 Conn. 259, 266-267 (1987) (when police enter private premises in response to call for help, detectives may photograph and measure without search warrant evidence in plain view of initial responding officers); State *vs*. West, *supra* (act of photographing documents is form of seizure of images contained thereon but comes within plain view exception to warrant requirement provided criteria of plain view doctrine are met). Still others have concluded that photographs are simply a memorialization of what an officer observes. See *People* v. *Macioce*, 197 Cal. App. 3d 262, 276 (1987), cert. denied, 488 U.S. 908 (1988) ("Photographs taken and diagrams made of the scene constituted no more than a memorialization of what the officers observed"). We need not decide in this case whether the videotaping and photographing of a proper search would be unconstitutional.

[14]Nowhere are expectations of privacy greater than in the home, and "[i]n the home . . . *all* details are intimate details . . . ." *Kyllo* v. *United States*, 533 U.S. 27, 28 (2001). See, e.g., *Commonwealth* v. *Blood*, 400 Mass. 61, 67-68 & n.9 (1987) (art. 14 affords greater privacy protection from government eavesdropping for conversations that occur in home).

otherwise have the right to seize pursuant to a warrant or any exception thereto. Such limited intrusions are not offensive to the privacy interests protected by art. 14. This search, and the use of the videotape and photographs to document it, was.[15]

We do not agree with the Commonwealth that the officers acted properly because they videotaped and photographed only that which was in plain view. The fact that the officers seized certain items pursuant to the plain view doctrine does not mean that the Commonwealth can extend that rationale to support a general exploratory search of the home, photographing or videotaping anything they might find to be interesting or suspicious. See *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971) ("the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges").

The videotape and the photographs were properly suppressed.

b. *Items seized in plain view during the 1996 search.* Our conclusion that the limited search authorized by the warrant was converted into a general search of the home does not mean that evidence seized pursuant to the valid warrant or an exception to the warrant requirement must necessarily be suppressed. Cf. *Commonwealth* v. *D'Amour*, 428 Mass. 725, 730 (1999), citing *Commonwealth* v. *Lett*, 393 Mass. 141, 144-145 (1984) ("Even if the challenged provision of the warrant were improper, the remaining unchallenged provisions permit the seizure of the letter").

The judge suppressed those items that were not listed on the 1996 warrant but that the Commonwealth contends were validly seized pursuant to the plain view exception to the warrant requirement. In suppressing the evidence that the officers found in plain view, the motion judge first found that Dunn had a specific memory of a questionable invoice for each of the items seized during the 1996 search that were not listed in the warrant, and therefore "assumed" that there was probable cause for him to seize those items under the plain view exception once

---

[15]The authority of the Commonwealth to photograph or videotape murder and other crime scenes is not affected by our decision in this case.

they were discovered in the home. However, she next found that the exception did not apply because the Commonwealth had not met its burden of proving the discovery was inadvertent. The judge misapplied the inadvertence requirement.

All of the requirements for a plain view seizure were met in this case. The officers were lawfully in the home to execute a valid search warrant. The items that the officers seized were in plain view. Dunn recalled seeing specific invoices for the items seized that were not listed in the warrant, and therefore their "incriminating character [was] immediately apparent." *Commonwealth* v. *D'Amour, supra* at 730, quoting *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995). The testimony is undisputed that he had not completed his investigation into those invoices and did not believe that he had probable cause to include those items in the 1996 warrant application. The judge specifically found that Detective Dunn did not anticipate finding the specific items that were seized. In short, although there may have been certain items that stood out in his mind as a result of his review of many suspicious invoices, he lacked "probable cause before entering the room to believe the items would be there," *Commonwealth* v. *D'Amour, supra* at 732, quoting *Commonwealth* v. *Cefalo*, 381 Mass. 319, 331 (1980), thus satisfying the inadvertence requirement.

In support of her conclusion that the discovery of these items was not inadvertent, the judge points to the large number of questionable invoices reviewed prior to the search, the decision to conduct the search early on in the investigation, and the decision to bring the police photographer to the home. From these facts, she concludes that the "presence of other suspicious items came as no surprise to the officers."

The anticipation of finding some additional contraband or other evidence of criminality is not the same as having probable cause to believe that specific items of evidence will be present at the location to be searched. Such generalized anticipation undoubtedly exists in conjunction with almost every search, and to conclude that its presence negates inadvertence would stretch that requirement beyond its intent and limited purpose. The requirement of inadvertence means only that the police lacked probable cause to believe, before entering the premises, that

specific items would be there. The items seized during the 1996 search that were not listed in the warrant should not have been suppressed.

c. *Testimony of the officers.* The judge excluded the officers' testimony relating to items they discovered during the 1996 search that were depicted in the photographs or videotape. She provided no explanation for this ruling. However, having concluded that the 1996 search became a general search in violation of art. 14 and the Fourth Amendment, we further conclude that the judge was correct to suppress all testimony regarding that general search as depicted in the videotape and photographs. There is no need to parse each observation to determine whether it was made within the search as authorized by the warrant. Observations by the officers of the stolen items listed in the 1996 warrant and those which we have now held were properly seized in plain view, were observations made within the authorized search. Testimony regarding those observations is therefore admissible. The line the judge drew as to testimony regarding the observations made of all other items depicted in the videotape and photographs was correct. That testimony was properly suppressed.

*The 1997 search.* In his application for the 1997 warrant, Dunn sought authority to search for and seize a number of items that had been videotaped or photographed during the 1996 search, and which he subsequently determined were obtained through fraudulent invoices. In light of our conclusion that the 1996 search was converted into a general search, and that the videotape and photographs thereof were properly suppressed, we next consider whether the judge also properly ordered suppressed "all evidence obtained during the execution of the 1997 warrant relating to items depicted in photographs and/or in the video tape."

The general rule is that evidence is to be excluded if it is found to be the "fruit" of a police officer's unlawful actions. See *Wong Sun* v. *United States*, 371 U.S. 471, 484 (1963). "In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, [the United States Supreme] Court held nearly half a century ago that evidence seized during an unlawful search could not

constitute proof against the victim of the search." *Id.*, citing *Boyd* v. *United States*, 116 U.S. 616 (1886), and *Weeks* v. *United States*, 232 U.S. 383 (1914). "The exclusionary prohibition extends as well to the indirect as the direct products of such invasions." *Wong Sun* v. *United States, supra,* citing *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920).

However, the *Wong Sun* case also reaffirmed that the exclusionary rule does not apply when the government learned about the evidence "from an independent source" or when the connection between the police officer's conduct and the discovery of the evidence has "become so attenuated as to dissipate the taint." *Wong Sun* v. *United States, supra,* quoting *Silverthorne Lumber Co.* v. *United States, supra,* and *Nardone* v. *United States*, 308 U.S. 338, 341 (1939). Over time, the inevitable discovery rule has evolved as an exception to the exclusionary rule. See *Nix* v. *Williams*, 467 U.S. 431 (1984); *Commonwealth* v. *O'Connor*, 406 Mass. 112, 115-116 (1989).

Here, the Commonwealth asserts that the evidence from the 1997 search should not be excluded because the police would have discovered the evidence during their continuing review and investigation into the suspicious invoices. To sustain this assertion, "the Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence and, once the relevant facts have been proved, that discovery by lawful means was 'certain as a practical matter.' " *Commonwealth* v. *Perrot*, 407 Mass. 539, 547 (1990), quoting *Commonwealth* v. *O'Connor, supra* at 117. In this context, "inevitable" means that it must be either "certain as a practical matter" or "virtually certain" that the officers would have discovered the evidence by lawful means. *Commonwealth* v. *Perrot, supra* at 547. This is a "demanding test." *Id.* at 548.

The judge found that the Commonwealth had not met its burden of establishing that the items photographed and videotaped during the 1996 search would have been discovered and properly seized through independent or inevitable investigation, absent the illegality. She concluded that the videotape and photographs were used to identify the items for further investigation, and that the Commonwealth's investigation was expanded thereby to include them. With regard to those items,

the search warrant application prepared in connection with the 1997 search suggests that the principal investigation conducted after the 1996 search was to find and examine the invoices corresponding to the items photographed. To the extent there was a match, Dunn included the specific item in the 1997 warrant application. In these circumstances, we do not find that the judge's conclusions regarding taint were clearly erroneous. Therefore, the items listed in the 1997 warrant that Dunn indicates he "saw" during the 1996 search were properly suppressed.

*Conclusion.* The judge's order suppressing the photographs and videotape made during the 1996 search, the evidence seized during the 1997 search that had been depicted in the photographs and videotape, and the testimony of the officers about their observations of the items photographed or videotaped during the 1996 search is affirmed. The judge's order suppressing the items that were seized in plain view during the 1996 search but were not listed on the warrant, is reversed. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*