NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-932                                        Appeals Court

COMMONWEALTH  vs.  AARON M. TARJICK.


No. 13-P-932.

Hampshire.     December 3, 2014. - May 18, 2015.

Present:  Kantrowitz, Green, & Meade, JJ.


Practice, Criminal, Motion to suppress, Warrant.  Constitutional
    Law, Search and seizure.  Search and Seizure, Warrant,
    Plain view.  Evidence, Digital image, Photograph, Prior
    misconduct.



Indictments found and returned in the Superior Court
Department on September 22 and December 17, 2010.

A pretrial motion to suppress evidence was heard by Mary-
Lou Rup, J., and the cases were tried before C. Jeffrey Kinder,
J.


Elaine Fronhofer for the defendant.
Joseph A. Pieropan, Assistant District Attorney, for the
Commonwealth.


KANTROWITZ, J.  This matter involves the interplay between

twenty-first century technology and twentieth century search and

seizure principles.  We hold that the police, while executing a

search warrant for nude images of the defendant's thirteen year

old stepdaughter on a video camera, cellular telephone (cell phone), and computer, were justified in seizing three memory cards from digital cameras that they came across.[1]

The defendant challenges the propriety of the order denying his motion to suppress the contents of a memory card removed from one of the digital cameras. He also challenges the admission at trial of enlarged photographs of one young female victim at various ages, the Commonwealth's references to the defendant's status as a prisoner, and the playing of two recordings of telephone calls that he made from jail. We affirm.

Background.[2] Carla was the defendant's stepdaughter. She lived with her biological mother and the defendant, who were living together and were married when Carla was about seven or eight years old. Carla testified that in 2006, the defendant began sexually abusing and raping her. At one point, she indicated that the defendant took at least one sexually explicit photograph of her using his cell phone and made sexually explicit video recordings of her with a video camera. The

---

[1] As it turns out, the only nude pictures that were discovered were those of the defendant and his young sons. At trial, the defendant was found not guilty of the single charge that arose from that discovery, which involved nude images of one son that were taken from one of the memory cards.

[2] The names of the child victims, Carla and Nina, are pseudonyms.

police suspected that the defendant transferred or copied the images to the family computer because Carla told authorities that her mother had said that the defendant was viewing sexually explicit images of young girls on the computer. After Carla disclosed the abuse, she went to live with her biological father. The second victim, Nina, was Carla's ten year old friend from school. The defendant sexually abused Nina on multiple occasions when she visited.

Members of the State police obtained a warrant to search the defendant's home after Carla disclosed the abuse and information about the sexually explicit recordings. The warrant listed the defendant's cell phone, the family computer, and the family video camera as items to seize. The police "seized three memory cards that were in the camcorders or digital cameras." The memory cards were not included in the warrant. A second warrant was obtained to search the contents of the memory cards. From one particular memory card, introduced at trial as the ADATA card, eight photographs were retrieved, some of which included images of the defendant posing partially nude with his young son, who was two or three years old. No sexually explicit photographs or video recordings of Carla or Nina were found.

The defendant was charged with numerous counts related to his abuse of Carla and Nina, and one count related to his son

and the nude photographs.[3]  On May 18, 2012, a judge denied the

defendant's motion to suppress the memory cards.[4]  The

Commonwealth introduced three nude images of the defendant and

his son as exhibits at trial and placed poster-size

reproductions of the images in front of the jury.[5]

---

[3] The defendant was indicted by a Hampshire County grand jury of aggravated rape of a child (Carla), three counts of indecent assault and battery on a child under age fourteen (Carla), and one count of open and gross lewdness and lascivious behavior (Carla).  A Berkshire County grand jury indicted the defendant on three counts of rape of a child with force (Carla), eight counts of indecent assault and battery on a child under age fourteen (Carla), one count of rape of a child with force (Nina), and one count of posing a child in a state of nudity (defendant's son).  The Berkshire County charges were transferred to Hampshire County.  The defendant was found not guilty on the count of posing his son in a state of nudity.  He was found guilty of the lesser included offense of rape without force for the count involving Nina, and he was convicted of all other charges.

[4] The defendant moved to suppress all evidence outside the scope of the warrant to search his home, including all the memory cards.  In a supporting memorandum, while he specifically mentioned the ADATA card containing the nude images, he argued for suppression of all the memory cards.

[5] Exhibits 26, 27, and 28 in the defendant's record appendix are the nude images.  Each of those images contains white strips or markings that partially obscure the face and/or genital area of the people in the photographs, apparently as an attempt to redact the sexually explicit nature of the images.  The record and briefs of the parties are unclear on whether the poster-size versions used at trial contained similar markings to redact the images.  Without explaining further, the defendant states in his brief that "'edited' versions were used" during Carla's direct examination.  The defendant testified that his wife took the photographs and that he was making this particular pose, which involved the defendant tucking his penis between his legs, as a joke based on the movie "The Silence of the Lambs."

Motion to suppress.  The defendant argues that his motion to suppress the memory cards, including the ADATA card, should have been allowed because the memory cards were not specified in the warrant to search his home.[6]

Exhibit 26 shows a close-up of the defendant's naked groin with his penis tucked between his legs several inches from his son's face.  Exhibit 27 shows the defendant in a similar pose while holding his own shirt above his waist and simultaneously lifting his son's shirt to expose his son's penis.  Exhibit 28 shows the defendant leaning against a door frame and holding his shirt above his waist to expose his naked groin while his son stands nearby and stares.

We note at the outset that the defendant was found not guilty of the one charge involving the nude images of his son. The defendant also exploited this lack of evidence in cross-examination and in closing, by demonstrating that pictures that

---

[6] Other images taken from the ADATA memory card showed the defendant nude with his sons, also nude, in a child-size swimming pool outside his house.  These images were not part of the charge against the defendant for posing a child in a state of nudity.  The defendant apparently introduced the swimming pool images to provide context for a telephone call with his wife wherein she informed him that the memory cards had been seized, and he responded, "I told you not to take those f-ing pictures."  The Commonwealth played this telephone call for the jury and suggested that the defendant made this statement to his wife in reference to the nude images of his one son that were the basis of the single charge.  The defendant suggested that his statement to his wife was in reference to the swimming pool images.

the victim indicated were taken were not recovered.  While the matter under these circumstances might be considered moot, the defendant argues that the images were prejudicial for various reasons, including that they bolstered Carla's testimony that he shaved his pubic area.[7]  As we agree that the pictures in fact bolstered Carla's testimony, we address the issue raised.

Evidence may be seized without a warrant if it is found in plain view.  Commonwealth v. Balicki, 436 Mass. 1, 8 (2002).  The doctrine applies

> "(1) where the police are lawfully in a position to view the object; (2) where the police have a lawful right of access to the object; and (3) in cases concerning (a) contraband, weapons, or other items illegally possessed, where the incriminating character of the object is immediately apparent; or (b) other types of evidence ('mere evidence'), where the particular evidence is plausibly related to criminal activity of which the police are already aware."

Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 306-307 (2010) (citations omitted).  Under the plain view doctrine, the evidence must be discovered inadvertently, which "means only that the police lacked probable cause to believe, prior to the

---

[7] The defendant's genitalia was visible in the photographs, though the images that the Commonwealth introduced at trial were partially covered and masked to some extent.  See note 5, supra.  The defendant argues that in addition to bolstering Carla's testimony, these images suggested to the jury that he had a lewd character and made Carla's testimony more credible insofar as she made uncharged allegations that the defendant had taken nude photographs of her as well.

search, that specific items would be discovered during the search." Commonwealth v. Balicki, supra at 10.

Here, Carla stated that the defendant, using his cell phone, took sexually explicit photographs of her and, using his video camera, recorded her nude. Carla also stated that her mother told her that the mother had found the defendant viewing pornographic images of young girls on the family computer in their living room. An affidavit from a State police officer included this information and sought to retrieve the defendant's cell phone, the family computer that the officer suspected contained images of Carla, and the family video camera. In executing the warrant, the police came across various digital cameras, which contained memory cards. The officers seized the memory cards, but not the cameras from which the cards were removed, and prepared a second search warrant to view the images stored on the cards.

Although the original warrant did not include memory cards, the cards were "plausibly related to criminal activity" of which the officers executing the original warrant were already aware. The officers were also aware that data may be freely transferred from one device to another through memory cards, and they could reasonably have concluded that the memory cards might have contained the alleged recordings. See Commonwealth v. Sliech-Brodeur, 457 Mass. at 306-307. The inadvertence requirement is

also satisfied because there is no indication that the police had probable cause to believe, prior to the search, that these specific memory cards or the cameras containing them would be found.  See Commonwealth v. Balicki, 436 Mass. at 10.

The seizure was within the plain view doctrine because the police acted on "knowledge of the facts and circumstances that would have warranted a person of reasonable caution in believing that the thing possessed is evidence of crime."  Commonwealth v. Pierre, 71 Mass. App. Ct. 58, 64 (2008), quoting from Commonwealth v. Cullen, 62 Mass. App. Ct. 390, 402 (2004).  Importantly, the police also obtained a second warrant before conducting a forensic examination of the contents of the memory cards.[8]

Considering the constantly evolving nature of technology, we do not reach the issue of whether the police in this case could have included, in their application for the original warrant, any memory cards capable of storing digital images or recordings.  We hold only that on these particular facts, the memory cards were plausibly related to the victim's allegations

---

[8] On discovery of the memory cards, the officers were also justified in recognizing the possibility that any evidence contained on them could be at risk of erasure or destruction, making it reasonable for the officers to seize the cards to preserve the evidence while applying for the second warrant. See Commonwealth v. Gentile, 437 Mass. 569, 573 (2002).

and were properly seized under the plain view doctrine.  See Commonwealth v. Sliech-Brodeur, 457 Mass. at 306-307.

Photographs of victim.  The defendant argues that school portraits of Carla should have been excluded from evidence because the images were inflammatory and created sympathy for the victim.  The Commonwealth placed poster-sized versions of these various school portraits of Carla before the jury.

"Evidence is relevant if it has a rational tendency to prove an issue in the case, or render a desired inference more probable than it would be [otherwise]."  Commonwealth v. Wallace, 70 Mass. App. Ct. 757, 764 (2007) (citations and quotations omitted).  Mass. G. Evid. § 401 (2014).  "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge."  Commonwealth v. Dunn, 407 Mass. 798, 807 (1990).

Here, the judge did not abuse his discretion in ruling that the photographs of Carla had probative value as they depicted her at relevant times, particularly when she was younger and first knew the defendant.  See Commonwealth v. Wallace, 70 Mass. App. Ct. at 764.  As the judge noted, even if some of the photographs predated the defendant's abuse of Carla, the earlier images were relevant as they depicted her during the period when the defendant first met her.  There was no abuse of discretion

as the judge could have reasonably found that the danger of unfair prejudice did not substantially outweigh the probative value of the images. See Commonwealth v. Dunn, 407 Mass. at 807; Mass. G. Evid. § 403.[9]

References to imprisonment. Lastly, the defendant argues that the Commonwealth undercut his presumption of innocence by referring to his status as an inmate and playing audio recordings of two telephone calls that he made from jail while awaiting trial.[10]

"Evidence of a defendant's prior incarceration may be admitted if it is offered for a relevant purpose other than to show the defendant's criminal propensity or bad character, and if the probative value of its relevant purpose outweighs the

[9] The judge also instructed the jury to focus only on the evidence: "You must determine the facts solely on the evidence as you've heard it and seen it in this courtroom and on nothing else. You may not be influenced by any bias or prejudice for or against the Commonwealth or the defendant. You're not to be swayed by any personal likes or dislikes. Emotion or sympathy, passion or prejudice have no place in your deliberations. The Commonwealth and the defendant have a right to have the case judged by fair and impartial jurors."

[10] In her opening statement, the prosecutor told the jurors that they would hear from a witness who would describe what the defendant said while they were "incarcerated" and "were cellmates." The prosecutor also told the jury that they would hear audio recordings of what the defendant said "while he was in jail." The jury later heard two telephone calls, made from jail, that included prerecorded language before the calls that identified the defendant as an inmate. While cross-examining the defendant, the prosecutor made reference to those conversations. The Commonwealth's closing argument also made a reference to calls that the defendant "made from the jail."

risk of unfair prejudice."  Commonwealth v. Brown, 462 Mass. 620, 628 (2012).

In here, the telephone calls made from jail each had independent relevance because each call had "a rational tendency to prove an issue in the case, or render a desired inference more probable than it would be [otherwise]."  Commonwealth v. Wallace, 70 Mass. App. Ct. at 764 (citations and quotations omitted).  See Mass. G. Evid. § 401.  The telephone calls also had a "relevant purpose other than to show the defendant's criminal propensity or bad character."  Commonwealth v. Brown, 462 Mass. at 628.

In the first telephone call, the defendant spoke with another male and indicated that someone named "Joe" was with him in jail.  "Joe" was a prisoner with the defendant and a witness whom the Commonwealth planned on calling to testify to conversations he had with the defendant.  That the witness, at some later point during the middle of trial, became uncooperative and did not wish to testify does not detract from the fact that at the time the prosecutor made the statements in her opening and played the telephone call to the jury, she reasonably believed that the witness would be testifying.

In the second telephone call, the defendant spoke with his wife, who told him that police had seized from a camera a memory card that contained nude pictures of the defendant and his sons

in their pool.  See note 6, supra.  The defendant then told his wife, "I told you not to take those f-ing pictures."  The Commonwealth introduced this second telephone call to show that the defendant had knowledge of the existence of the nude images of his sons, which related to the charge against him of posing one son in a state of nudity.  See Commonwealth v. Wallace, 70 Mass. App. Ct. at 764.

The prosecutor's references in the opening statement were necessary to place in context the evidence that the Commonwealth reasonably expected to produce at trial.  They were neither unfairly prejudicial nor impermissibly reflective of bad character.  See Commonwealth v. Brown, 462 Mass. at 628; Commonwealth v. Wallace, 70 Mass. App. Ct. at 764.

Regarding the prerecorded language before each telephone call that identified the defendant as an inmate, the Commonwealth concedes that the better practice would have been to remove that language before placing the evidence before the jury.  The judge, however, delivered extensive instructions that the jury should consider only the facts and not become swayed by prejudice or emotion.  The jury are presumed to have followed these instructions and disregarded any biases or prejudice that

may have arisen from the references to his inmate status.  See

Commonwealth v. Maynard, 436 Mass. 558, 571 (2002).[11]

Judgments affirmed.

---

[11] The defendant's observation that the Commonwealth made improper use of his prior convictions does not rise to the level of appellate argument.  See Commonwealth v. O'Brien, 423 Mass. 841, 851 n.17 (1996).  Regardless, after a discussion at sidebar, the judge instructed the jury to consider the evidence solely for the purpose of evaluating the defendant's credibility as a witness.  Defense counsel later stated that he was satisfied.  There was no error.