NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-664

COMMONWEALTH

vs.

ABDIRAHAMAN YUSUF.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In June 2016, members of the Boston police department youth violence strike force (gang unit) began investigating the defendant for illegally possessing firearms.  A gang unit detective viewed and preserved twenty-five to thirty videos posted on the defendant's Snapchat account showing the defendant with firearms.  In February 2017, while the investigation was ongoing, police responded to an unrelated domestic disturbance call at the defendant's residence.  While wearing a body-worn camera (BWC), one of the police officers spoke with the defendant as he stood at the threshold of his bedroom.  Two weeks later a gang unit detective obtained this BWC footage and compared it with the Snapchat videos.  At that time, the

detective believed, but did not have confirmation, that some of the Snapchat videos had been filmed in the defendant's bedroom. The BWC footage confirmed that the distinctive curtains in the defendant's bedroom matched the bedroom curtains depicted in one of the defendant's Snapchat videos in which he brandished the weapons. The detective then applied for and received a search warrant for the defendant's home. Officers executed the search warrant and recovered a firearm, ammunition, and narcotics. The defendant was later charged in the Superior Court with gun related crimes.

Prior to trial, a Superior Court judge denied the defendant's motion to suppress the evidence recovered as a result of the search warrant. In May 2019, the defendant was convicted of unlawful possession of a firearm and unlawful possession of ammunition. The defendant appealed, challenging the judge's denial of his motion to suppress. The Supreme Judicial Court (SJC) concluded that the BWC footage had been lawfully captured, but "[t]he later, warrantless, investigatory review of the video footage" was unconstitutional and "violated the defendant's right to be protected from unreasonable searches guaranteed by the Fourth Amendment and art. 14." Commonwealth v. Yusuf, 488 Mass. 379, 380 (2021). The case was remanded for an evidentiary hearing to determine whether "the decision to

2

seek the search warrant was not prompted by the unlawful review of the video footage."  Id. at 398.  After an evidentiary hearing, a different Superior Court judge allowed the defendant's motion to suppress.  We affirm.

Discussion.  "When reviewing a motion to suppress evidence, we adopt the motion judge's subsidiary findings of fact absent clear error, but we independently determine the correctness of the judge's application of constitutional principles to the facts as found."  Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004).  "The general rule is that evidence is to be excluded if it is found to be the 'fruit' of a police officer's unlawful actions."  Yusuf, 488 Mass. at 397, quoting Commonwealth v. Balicki, 436 Mass. 1, 15 (2002).  Here, the SJC held that the warrantless review of BWC footage was unlawful and remanded for a determination whether the Commonwealth could establish the independent source exception to the general rule.  Id. at 398.  To satisfy the independent source exception, the Commonwealth must show that "(1) the officers' decision to seek the search warrant was not prompted by what they observed during the initial illegal [search], and (2) the affidavit supporting the search warrant application contained sufficient information to establish probable cause," apart from any observations gleaned

from the unlawful viewing of the BWC footage.  Commonwealth v. Pearson, 486 Mass. 809, 813 (2021).

The Commonwealth first contends that it was error for the judge to find that the detective who applied for the search warrant "testified that if he did not have the body-worn camera video to establish that the Snap-Chat video was filmed in defendant's home, he would have needed additional information before applying for a warrant."  The Commonwealth asserts that the judge ignored the detective's testimony to the contrary.

"We leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing" (quotation and citation omitted).  Yusuf, 488 Mass. at 385.  Here, the detective testified that the match between the curtains in the two videos "was a significant link" between the illegal activity and the defendant's home.  The detective continued, "[t]he nexus from the search warrant clearly was the video of the Snapchat [with the] curtains compared to the body cam video."  When asked by the judge whether he would have applied for the search warrant if he had not reviewed the BWC footage, the detective testified that he "[could not] say" whether he would have applied for the warrant at that time.  Although the detective also testified that he believed he had information even without the BWC footage to

establish probable cause for a search warrant, he later testified that, without his review of the BWC footage, he "definitely would have continued to do an investigation," rather than applying for the warrant at the time he applied for it. On this record, we decline to disturb the judge's implicit determination regarding which portions of the detective's testimony merited greater weight. See Catanzaro, 441 Mass. at 50. We thus discern no clear error in the judge's finding that without reviewing the BWC footage, the detective required additional information to obtain a warrant.

The Commonwealth also argues that the judge erred by considering only the detective's subjective intent to seek a search warrant before he obtained the BWC video. A judge "objectively must assess the totality of the attendant circumstances to ascertain whether the officers' stated reasons for seeking the warrant are implausible" (quotation and citation omitted). Pearson, 486 Mass. at 815. However, this analysis presumes a police officer claimed an intent to seek the warrant notwithstanding the tainted information. In Pearson, the issue was remanded for hearing because "there [was] no evidence in the record demonstrating that the detective would not have sought the warrant had the officers not made the initial illegal entry." Id. at 816. Here, by contrast, the judge found that

5

the detective testified, in effect, that he would not have sought this warrant absent the information on the BWC video. In other words, the judge found that the detective was prompted by the BWC footage to apply for the warrant. Therefore, there was no need for the judge to explore the "plausibility" of an explanation that was not given by the detective. We discern no error in the judge's conclusion that the Commonwealth failed to prove that the decision to file this warrant application was not prompted by what was observed on the BWC video.[1]

Order allowing motion to suppress affirmed.

By the Court (Massing, Walsh & Brennan, JJ.[2]),

*Paul Little*

Clerk

Entered: March 7, 2025.

---

[1] Because we conclude that the search warrant application was prompted by the unlawful viewing of the BWC footage, we need not reach the issue of whether, absent observations gleaned from the unlawful viewing, the affidavit supporting the search warrant application contained sufficient information to establish probable cause. See Pearson, 486 Mass. at 814.

[2] The panelists are listed in order of seniority.

6